## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LR TRUST, derivatively on behalf of ATKORE, INC.,<br><br>                           Plaintiff,<br><br>    vs.<br><br>WILLIAM E. WALTZ, JR., JOHN M. DEITZER, DAVID P. JOHNSON, MICHAEL V. SCHROCK, B. JOANNE EDWARDS, JERI L. ISBELL, WILBERT W. JAMES, JR., JUSTIN A. KERSHAW, SCOTT H. MUSE, BETTY R. WYNN, and A. MARK ZEFFIRO<br><br>                         Defendants,<br>    and<br><br>ATKORE, INC.,<br>                     Nominal Defendant. | No.<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Plaintiff LR Trust ("Plaintiff"), by its undersigned attorneys, brings this stockholder derivative action on behalf of nominal defendant Atkore, Inc. ("Atkore" or the "Company") against the current members of the Company's Board of Directors (the "Board") and certain current and former officers of the Company (the "Individual Defendants") for violations of the federal securities laws, breaches of their fiduciary duties, and other misconduct that has materially damaged the Company and its stockholders. These allegations are made upon personal knowledge with respect to Plaintiff and, as to all other matters, upon information and belief based upon the investigation and analysis by Plaintiff's counsel, including, among other things, a review of the Company's press releases and public filings with the United States Securities and Exchange Commission ("SEC"), corporate governance documents published on the Company's website, a review of the securities fraud class action complaints filed against the Company, and certain of its current and former officers, transcripts of the Company's conference calls with financial analysts

and investors, published news reports, financial analyst reports, and other publicly available information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

## I.     NATURE OF THE ACTION

1.      Atkore is a leading manufacturer of electrical conduit and mechanical products for commercial, industrial, and infrastructure applications. The Company primarily operates in the construction and utility markets, holding a significant share of the PVC electrical conduit segment in the United States within an industry valued at over $58 billion in 2023. Along with other competitors in the industry, Atkore relied on the Oil Price Information Service ("OPIS"), which is owned by Dow Jones & Co., and provided key industry reports, including the "Petrochem Wire" that listed PVC pipe prices and serves as a critical pricing benchmark for market participants.

2.      The Individual Defendants breached their fiduciary duties to Atkore and its shareholders by causing or permitting the Company to engage in an unlawful price-fixing conspiracy to artificially inflate the price of PVC pipe products. This anticompetitive conduct was facilitated by the pandemic's impact on global supply chains, as soaring shipping costs pushed foreign PVC pipe manufacturers out of the U.S. market, creating an opportunity for domestic competitors to coordinate pricing without the competitive pressure of international rivals. This conduct exposed Atkore to significant legal liability under the Sherman Act and other antitrust laws, putting the Company's reputation, financial stability, and shareholder value at substantial risk.

3.      The price-fixing scheme involved coordinated communications among PVC pipe manufacturers, including Atkore, who exchanged sensitive pricing data and used their shared reliance on OPIS industry reports to implement nearly identical price increases across markets.

2

This collusive behavior resulted in Atkore's electrical segment's EBITDA growing by 240% between 2019 and 2023, driven by an 86% price increase and margin expansion from 20% to 38%—gains that were artificially inflated through illegal means rather than legitimate business operations.

4.     To conceal their breach of fiduciary duty and the Company's participation in the price-fixing conspiracy, the Individual Defendants embarked on a systematic campaign of false and misleading statements to investors and the market. This deception became particularly critical as the pandemic's effects waned and foreign PVC pipe manufacturers began reentering the U.S. market, threatening to expose the artificial nature of the coordinated pricing scheme. Beginning in 2022, they repeatedly attributed Atkore's outsized performance to legitimate business fundamentals, including so-called "pricing normalization," while deliberately concealing the true source of the Company's inflated financial results.

5.     The deceptive statements continued throughout 2023, with the Company increasing its financial guidance multiple times while consistently emphasizing "strong pricing power" and downplaying competitive threats from returning foreign manufacturers. By the fourth quarter of 2023, Atkore claimed to have exceeded the high end of its guidance, reaching $19.40 in adjusted net income per diluted share and $1.042 billion in adjusted EBITDA—achievements that were tainted by the underlying price-fixing conspiracy.

6.     Even as the price-fixing scheme began to unravel in 2024, the Individual Defendants continued their cover-up efforts. When sales declined in the first quarter of 2024, they falsely reassured investors that decreased prices were part of expected "pricing normalization," rather than acknowledging the collapse of their illegal coordination scheme. The next quarter saw a steep sales decline of 11.5%, with continued reliance on the pricing normalization narrative.

Nevertheless, Chief Executive Officer ("CEO") William E. Waltz ("Waltz") insisted the pricing environment remained stable, and the Company reaffirmed long-term guidance for fiscal year 2025.

7.     The truth began to emerge on July 26, 2024, when an independent research firm published a report exposing the coordinated pricing scheme among PVC pipe manufacturers. The report raised serious concerns about Atkore's pricing practices, highlighting that conduit manufacturers, including Atkore, implemented nearly identical price increases across markets following coordinated communications. The report questioned the sustainability of these elevated margins and criticized the Company's aggressive fiscal 2025 earnings target.

8.     Later that same month, antitrust class actions began to be filed against Atkore, alleging violations of the Sherman Act, among other claims. The Individual Defendants further breached their fiduciary duties by their deception regarding the Company's legal exposure. On November 21, 2024, when Atkore finally disclosed the antitrust litigation in its 2024 Annual Report, the Company downplayed the significance of this legal exposure, falsely asserting the claims would not materially impact its operations or financial condition. On the same day, the Company reported weak fourth-quarter 2024 financial results, including a year-over-year decline in sales of $81.6 million, and issued disappointing guidance for the first quarter of 2025, well below analyst expectations.

9.     The cover-up continued into 2025, with the Company's February 4, 2025 earnings release attributing poor performance to "decreased average selling prices," especially in the PVC pipe segment, without acknowledging that these decreases resulted from the collapse of their illegal price-fixing scheme. Atkore released its first quarter 2025 financial results, missing sales forecasts by nearly $20 million and drastically lowering its full-year adjusted net income per

diluted share and adjusted EBITDA guidance. Analysts responded by sharply cutting price targets, and Atkore's stock plummeted nearly 20% in a single day. However, not all stockholders seem to have been equally damaged as Defendant Waltz and another Atkore director collectively sold more than 200,000 shares reaping more than $26 million in proceeds during the time that Atkore's stock price was inflated.

10. Following the above alleged false and misleading statements by the Company and its directors and officers, on February 21, 2025, securities class action lawsuits began to be filed against the Company and certain officers.

11. On May 30, 2024, the pending securities class action lawsuits were consolidated under the caption, *In re Atkore Inc. Securities Litigation*, Master File No. 1:25-cv-01851. The lawsuits consolidated therein charge Atkore, Waltz, John M. Deitzer ("Deitzer"), and David P. Johnson ("Johnson") with violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as control person violations under Section 20(a) of the Exchange Act, on behalf of all purchasers of Atkore securities from August 2, 2022 through February 3, 2025, inclusive.

12. The Individual Defendants' breach of fiduciary duty through the price-fixing conspiracy and subsequent cover-up has caused severe harm to Atkore and its shareholders. As a result, the Company now faces significant antitrust liability, securities class action lawsuits, and substantial legal defense costs that will drain corporate resources.

13. Compounding their breach of fiduciary duty, during the period when the Company's stock was artificially inflated due to the price-fixing scheme and related false and misleading statements, the Individual Defendants caused Atkore to repurchase over two million shares of its common stock at inflated prices, costing more than $313 million.

14. As a result of the Individual Defendants' breaches of fiduciary duty and other misconduct, Atkore has incurred significant damages, including irreparable harm to its reputation.

15. Plaintiff did not make a demand prior to bringing this action because it would be futile. The Company's directors are neither disinterested nor independent. In the absence of this action, Atkore will neither recover its damages nor properly remediate the weaknesses in its internal controls and corporate governance practices and procedures.

## II.    JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 20(a), 10(b), and 14(a) of the Exchange Act of 1934 ("the Exchange Act"), and SEC Rules 10b-5 and 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder, and for contribution pursuant to Section 21D of the Exchange Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

17. This Court has jurisdiction over each Defendant named herein because each Defendant is either incorporated and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

18. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), where the Company maintains its principal executive offices and conducts substantial business. Further, the Securities Class Actions and the Antitrust Class Action are pending in this District.

III.     PARTIES

A.     **Plaintiff LR Trust**

19.     LR Trust has been a shareholder of Atkore since February 22, 2021, and has held Atkore common stock continuously since that time. As such, Plaintiff was a shareholder at the time of the transactions complained of herein.

B.     **Defendants**

1.     **Nominal Defendant Atkore**

20.     Atkore is incorporated under Delaware Law with its principal executive offices at 16100 South Lathrop Avenue, Harvey, IL 60426. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "ATKR".

2.     **Individual Defendants**

**Director Defendants**

21.     William E. Waltz, Jr. ("Waltz") is the Company's President and CEO since 2018, an Atkore director since 2013, and serves as a member of its Executive Committee. Since 2023, Waltz has received the following compensation:

| YEAR | SALARY | STOCK AWARDS | OPTIONS AWARDS | NON-EQUITY INCENTIVE PLAN COMPENSATION | ALL OTHER COMPENSATION | TOTAL |
|------|--------|--------------|----------------|-----------------------------------------|------------------------|-------|
| 2024 | $1,073,077 | $5,999,372 | N/A | $833,052 | $125,514 | $8,031,015 |
| 2023 | $1,023,077 | $3,750,064 | $1,249,975 | $884,466 | $30,674 | $6,938,256 |

22.     Michael V. Schrock ("Schrock") is an Atkore director since 2018, has served as Chairman of the Board since August 2018, and is Chair of its Executive Committee. Since 2023, Schrock received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|---|
| 2024 | $240,000 | $149,968 | $920 | $390,888 |
| 2023 | $227,500 | $140,046 | N/A | $367,546 |

23.     B. Joanne Edwards ("Edwards") is an Atkore director since May 2021 and is a member of the Human Resources and Compensation Committee and the Nominating and Governance Committee. Since 2023, Edwards received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|---|
| 2024 | $100,000 | $149,968 | $920 | $250,888 |
| 2023 | $75,000 | $139,975 | N/A | $214,975 |

24.     Jeri L. Isbell ("Isbell") is an Atkore director since May 2021, Chair of the Nominating and Governance Committee, and a member of the Human Resources and Compensation Committee. Since 2023, Isbell has received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|---|
| 2024 | $115,000 | $149,968 | $24,430 | $289,398 |
| 2023 | $108,750 | $140,046 | N/A | $248,796 |

25.     Wilbert W. James, Jr. ("James") is an Atkore director since 2011 and is a member of the Company's Audit Committee and the Nominating and Governance Committee. Since 2023, James has received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|---|
| 2024 | $100,000 | $149,968 | $14,616 | $264,584 |
| 2023 | $97,500 | $140,046 | N/A | $237,546 |

26.     t Justin A. Kershaw ("Kershaw") is an Atkore director since 2020, Chair of the Human Resources and Compensation Committee, and a member of the Audit Committee and Executive Committee. Since 2023, Kershaw has received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|------|------|------|------|------|
| 2024 | $115,000 | $149,968 | $16,051 | $281,019 |
| 2023 | $108,750 | $140,046 | N/A | $248,796 |

27.     Scott H. Muse ("Muse") is an Atkore director since 2015 and is a member of the Audit Committee and Nominating and Governance Committee. Since 2023, Muse received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|------|------|------|------|------|
| 2024 | $100,000 | $149,968 | $21,938 | $271,906 |
| 2023 | $100,000 | $140,046 | N/A | $240,046 |

28.     Betty R. Wynn ("Wynn") is an Atkore director since 2018 and is Chair of the Audit Committee and member of the Nominating and Governance Committee and the Executive Committee. Since 2023, Wynn received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|------|------|------|------|------|
| 2024 | $120,000 | $149,968 | $15,452 | $285,420 |
| 2023 | $117,500 | $140,046 | N/A | $257,546 |

29.     A. Mark Zeffiro ("Zeffiro") is an Atkore director since 2015 and is a member of the Audit Committee and the Human Resources and Compensation Committee. Since 2023, Zeffiro received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|------|------|------|------|------|
| 2024 | $100,000 | $149,968 | $11,462 | $261,430 |
| 2023 | $97,500 | $140,046 | N/A | $237,546 |

**Officer Defendants**

30.     John M. Deitzer ("Deitzer") has been the Chief Financial Officer ("CFO") of the Company since August 2024. Deitzer previously served as Vice President of Investor Relations from 2019 until August 2024. Since 2024, Deitzer received the following compensation:

| YEAR | SALARY | STOCK AWARDS | OPTIONS AWARDS | NON-EQUITY INCENTIVE PLAN COMPENSATION | ALL OTHER COMPENSATION | TOTAL |
|------|--------|--------------|----------------|----------------------------------------|------------------------|-------|
| 2024 | $362,873 | $180,043 | N/A | $205,558 | $15,390 | $763,864 |

31.     David P. Johnson ("Johnson") is Atkore's former Vice President, Chief Financial Officer ("CFO") and Chief Accounting Officer. Johnson served as CFO of the Company from 2018 until August 2024 and as Chief Accounting Officer from 2019 until August 2024. Since 2023, Johnson received the following compensation:

| YEAR | SALARY | STOCK AWARDS | OPTIONS AWARDS | ALL OTHER COMPENSATION | TOTAL |
|------|--------|--------------|----------------|------------------------|-------|
| 2024 | $577,769 | $1,549,925 | N/A | $36,953 | $2,164,647 |
| 2023 | $549,462 | $1,012,510 | $337,497 | $22,433 | $2,229,154 |

32.     Defendants Waltz, Schrock, Edwards, Isbell, James, Kershaw, Muse, Wynn, and Zeffiro are referred to as the "Director Defendants."  Waltz, Deitzer, Johnson, Schrock, Edwards, Isbell, James, Kershaw, Muse, Wynn, and Zeffiro are referred to as the "Individual Defendants."

## IV.     THE INDIVIDUAL DEFENDANTS' DUTIES

33.     By reason of their positions as officers or directors of Atkore and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe to Atkore and its shareholders, fiduciary obligations of loyalty, good faith, due care, and candor, and were and are required to use their utmost ability to control, manage, and oversee Inari in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Atkore and its shareholders to benefit all shareholders equally and not in furtherance of their own personal interests or benefit.

34.     The Individual Defendants, because of their positions of control and authority as directors and officers of Atkore, were able to and did, directly and indirectly, exercise control over the wrongful acts complained of herein.

35.    As senior executive officers and directors of a publicly traded company whose common stock was registered with the SEC and traded on the NYSE, the Individual Defendants also owed a duty to ensure the reporting of accurate, complete, and truthful information concerning Atkore's financial condition, operations, products, internal controls, and business prospects.  In addition, the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all material facts so that the market price of the Company's shares would be based upon accurate information. To meet these duties, the Individual Defendants were required to exercise reasonable control and supervision over Atkore's management, policies, and internal controls.

36.    At all times relevant hereto, the Individual Defendants were the agents of each other and Atkore and were always acting within the course and scope of such agency.

37.    The Individual Defendants were and are also subject to particularized duties pursuant to specific policies in effect at Atkore.

**A.    Additional Duties Under Atkore's Code of Business Conduct and Ethics**

38.    Atkore's Code of Business Conduct and Ethics ("Code of Conduct") applies to all employees, officers and executives, and directors of Atkore.

39.    The Code of Conduct highlights the Company's commitment to the highest of ethical standards, stating that "Atkore . . . is committed to the highest standards of ethics and business conduct." The Code of Conduct emphasizes that this "commitment and standard of conduct governs Atkore's relationships with customers, suppliers, shareholders, competitors, the communities in which the Company operates and between Employees at every organizational level."

40.    The Code of Conduct requires the maintenance of the confidentiality of all Company information:

One of the Company's most valuable assets is information. Employees and Directors should maintain the confidentiality of information (whether or not it is considered proprietary) entrusted to them not only by the Company, but also by suppliers, customers and others related to our business. Confidential information includes all non-public information that might be of use to our competitors or harmful to the Company, or its customers or suppliers, if disclosed. Examples of confidential information include trade secrets, new product or marketing plans, customer lists, research and development, manufacturing processes, or acquisition or divestiture prospects.

41.    The Code of Conduct obligates the report of any concern of the violation of a law, regulation, or the Code of Conduct to a supervisor, Human Resources or the Legal Department. The Code of Conduct states that if "an Employee or Director violates the Company's Code, he or she will be subject to disciplinary action."

42.    The Code of Conduct prohibits trading Company securities based on material inside information:

Federal and state law prohibits the use of "material inside information" when trading in or recommending Company securities. In accordance with applicable federal and state law, all Employees and Directors must abide by the Atkore Insider Trading Policy. As outlined in the Insider Trading Policy, no Employee or Director may engage in transactions in Company stock while in possession of material inside information ("Insider Trading") related to Atkore. Further, no Employee or Director who is in possession of material inside information may communicate such information to third parties who may use such information in the decision to purchase or sell Company stock ("Tipping"). These restrictions also apply to securities of other companies if an Employee or Director learns of material inside information in the course of his or her duties for Atkore. In addition to violating Company policy, Insider Trading and Tipping are illegal.

43.    The Code of Conduct requires accurate and complete disclosure of information regarding the Company's business, financial condition, and results of operations:

The federal and state securities laws impose continuing disclosure requirements on the Company, and require Atkore to regularly file certain reports with and make certain submissions to the U.S. Securities and Exchange Commission (the "SEC") and the New York Stock Exchange ("NYSE") and disseminate them to its stockholders. Such reports must comply with all applicable legal and exchange requirements and may not contain material misstatements or omit material facts. All Employees and Directors directly or indirectly involved in preparing such reports, any Employees and Directors who regularly communicate with the press,

investors or analysts concerning the Company, and all representatives who assist the Company in preparing such reports and communications, will ensure that such reports and communications are: (i) full, fair, timely, accurate and understandable; and (ii) meet all legal requirements. This Code applies to all public disclosure of material information about the Company, including written disclosures, oral statements, visual presentations, press conferences and media calls.

**B. Additional Duties Under Atkore's Financial Code of Ethics**

44. Atkore's Code of Financial Ethics is a supplement to the Atkore Code of Business Conduct and applies to the CEO, CFO, and all other Senior Financial Officers of the Company.

45. The Financial Code of Ethics cautions against conflicts of interest and mandates that the interests of the Company must take priority in all business decisions:

> The CEO and Senior Financial Officers are expected to dedicate their best efforts to advancing the Company's interests, using unbiased and objective standards when making business decisions. The CEO and Senior Financial Officers are obligated to conduct the Company's business in an ethical and honest manner, including the ethical handling of actual or apparent conflicts of interest.

46. The Financial Code of Ethics emphasizes the obligation to ensure that all disclosures concerning the Company's business, financial condition, and results of operations are accurate, complete, and not misleading, and states: "When filing reports or submitting documents to the SEC, and in all other public communications, the CEO and Senior Financial Officers are expected to make disclosures that are full, fair, accurate, timely and understandable in all material respects."

**C. Additional Duties of Audit Committee Members**

47. The Audit Committee Charter sets forth additional duties for members of the Audit Committee and provides that members are obligated to assist the Board in its oversight of, among other things, Company's risk management practices and policies; the integrity of the Company's financial statements; the Company's compliance with legal and regulatory requirements; and the effectiveness and performance of the Company's internal audit function.

48.     The Audit Committee has additional powers and obligations, including:

- Assist the Board in overseeing (i) the quality and integrity of the financial statements of the Company; (ii) the Company's compliance with legal and regulatory requirements, including the effectiveness of the Company's internal control over financial reporting; (iii) the independent auditor's qualifications and independence; (iv) the performance of the Company's internal audit function and independent auditors; (v) the accounting, financial and external reporting policies and practices of the Company; (vi) the performance of the other functions set forth in this Charter; and (b) to prepare the report of the Committee required to be included in the Company's annual proxy statement under the rules of the U.S. Securities and Exchange Commission (the "SEC").

- Review and discuss the Company's annual audited financial statements and quarterly financial statements with management and the independent auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" and the results of the independent auditor's reviews of the quarterly financial statements, including any difficulties encountered or significant disagreements with management and management's responses to such matters.

- Receive and review any disclosure from the Company's CEO and CFO made in connection with the certification of the company's quarterly and annual reports filed with the SEC of any fraud, whether or not material, that involves management or other employees who have a significant role in the company's controls or significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting.

- Meet with management, the independent auditor and the internal auditor prior to each annual audit to discuss the scope of the audit, the procedures to be followed and the staffing of the audit.

- Review, and discuss as appropriate with management, the internal auditors and the independent auditor, the report of the independent auditor required by Section 10A(k) of the Exchange Act.

- Review and discuss with management and the independent auditor: (i) significant issues regarding accounting and auditing principles and practices and financial statement presentations, including all critical accounting policies and estimates, any significant changes in the Company's selection or application of accounting principles, and any significant issues as to the adequacy of the Company's internal controls over financial reporting and any special audit steps adopted in light of significant deficiencies or material weaknesses in the design and operation of internal controls over financial reporting; (ii) any analyses prepared by management or the independent

14

auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including analyses of the effects of alternative GAAP methods on the Company's financial statements; (iii) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the Company's financial statements; (iv) any significant correspondence or communications from regulators or governmental agencies; (v) any significant changes to the Company's auditing and accounting principles and practices suggested by the independent auditor, internal audit personnel or management; (vi) management's internal control report prepared in accordance with rules promulgated by the SEC pursuant to Section 404 of the Sarbanes-Oxley Act; and (vii) the independent auditors' selection of critical audit matters.

- Review and discuss with management the Company's guidelines and policies with respect to the process by which the Company undertakes risk assessment and risk management, including discussion of the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures.

- Recommend to the Board whether the annual audited financial statements should be included in the Company's Form 10-K.

- Prepare, review and approve the report of the Committee required by the SEC to be included in the Company's annual proxy statement.

- Review and discuss with the Chief Executive Officer and Chief Financial Officer the procedures undertaken in connection with the Chief Executive Officer's and the Chief Financial Officer's certifications for reports on Form 10-K and Form 10-Q.

- Review and discuss with the Chief Executive Officer and Chief Financial Officer their evaluation of the Company's disclosure controls, procedures and internal controls.

- Cause management to prepare a report in accordance with rules promulgated by the SEC pursuant to Section 404 of the Sarbanes-Oxley Act of 2002 and review such report of management's assessment of the effectiveness of internal control over financial reporting as of the end of each fiscal year.

- Report regularly to the Board and review with the Board any issues that arise with respect to (a) the quality or integrity of the Company's financial statements; (b) the performance and independence of the Company's independent auditor; (c) the performance of the Company's internal audit function; and (d) the Company's compliance with legal and regulatory requirements.

- Regularly review the Company's code of ethics to ensure that the Company and its employees comply with the highest standards of integrity and ethical and moral business conduct.

- Evaluate whether management is setting the appropriate tone at the top by communicating the importance of ethical behavior and the guidelines for acceptable business practices.

- Review and discuss with the Company's counsel any proposed disclosures of risks which could have a material impact on the Company.

- Exercise such other powers and perform such other duties and responsibilities as are incidental to the purposes, duties and responsibilities specified herein and as may from time to time be delegated to the Committee by the Board.

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Background

49.     Atkore is a global manufacturer that designs, produces, and sells a wide range of electrical, safety, and infrastructure products for use in the construction industry, focusing on items like conduit, cable, and safety systems. One of the Company's key products is water and electrical conduit PVC pipes. Atkore holds approximately a 35% market share in PVC electrical conduits, making it the largest player in that market.

50.     The lucrative PVC pipe industry, valued at over $58 billion in 2023, was affected by the pandemic, which caused rising shipping costs. Atkore and other competitors in the industry all used OPIS, which provided key industry reports, including the "Petrochem Wire" that listed PVC pipe prices. When the pandemic's soaring shipping costs pushed foreign companies out of the market, Atkore and its competitors engaged in an illegal price-fixing scheme, exchanging sensitive data to artificially inflate PVC piping prices.

51.     However, after the pandemic, foreign PVC pipe manufacturers reentered the market, threatening to reveal the illegal price-fixing scheme. As a result, the Company and the

Individual Defendants had to falsely represent the Company's financial health and blame declining product prices on normal supply and demand changes.

**B.    The Company Reports Increased Prices And Sales**

52.    On August 2, 2022, the Company filed with the SEC a Current Report on Form 8-K and attached a press release announcing its third quarter 2022 financial results. In the press release, the Company reported a 24.4% increase in net sales compared to the previous year, rising from $853.7 million to $1.06 billion, along with a $2.10 increase in its net income per diluted share, from $3.64 to $5.74.  Atkore attributed the increase in net sales primarily to "***increased average selling prices***[1] across the Company's products of $224.0 million" which were mostly driven "by the PVC pipe and conduit" categories within the "Electrical segment." Defendant Waltz touted the Company's "year-over-year earnings growth and margin expansion in both Electrical and Safety & Infrastructure" and stated:

> Our performance demonstrates the strength of the Atkore Business System and our industry-leading solutions, as well as our team's continued dedication to supporting our customers. We also continued our strong track record of strategically expanding our business in projected high-growth markets by acquiring United Poly Systems to build on our HDPE (high-density polyethylene) conduit portfolio. We are confident that we are well positioned to capitalize on future growth opportunities and deliver excellent service to our customers.

53.    During a conference call with financial analysts and investors to discuss the financial results, Defendant Waltz was asked about PVC pricing "relative to 12 months ago," and Waltz responded that pricing was "up compared to a year ago, and that's what's helping to drive margins." Waltz added on pricing that everything was "working out exactly as we anticipated ironically other than, if anything, ***we had even stronger Q3 with pricing and every other initiative we're driving.***"

---

[1] All emphasis herein is added unless otherwise stated.

54. Waltz also mentioned that the Company was not noticing any significant changes in the PVC supply sector: "No, I'm not aware of [any meaningful changes] in the electrical conduit market. Again, my competitors and I don't talk, but no, I'm not aware of anything."

55. On November 18, 2022, Atkore filed with the SEC a Current Report on Form 8-K and attached a press release announcing its fourth quarter and full-year 2022 financial results, including a 33.7% increase in net sales from the previous year, rising from $985.9 million to $3.9 billion. In the press release, Defendant Waltz highlighted the Company's "record results for fiscal 2022" as it continued to "successfully execute" its "strategic initiatives" to expand its portfolio and provide "differentiated value" to customers. Waltz stressed that Atkore's performance was "driven by the resilience of our business model, and our ability to dive value from our acquisitions." The Company also issued strong guidance for adjusted EBITA and a 2025 net income "goal":

> Fiscal 2023 First Quarter - The Company expects the first quarter of fiscal 2023 Adjusted EBITDA to be in the range of $240 - $260 million and Adjusted net income per diluted share to be in the range of $3.85 - $4.20.

> Fiscal 2023 Full Year - The Company expects fiscal year 2023 Adjusted EBITDA to be in the range of $850-$950 million and Adjusted net income per diluted share to be in the range of $13.10 - $14.90.

> Fiscal 2025 Full Year Goal - The Company is providing a long-term fiscal 2025 Adjusted net income per diluted share target of greater than $18.00.

56. On a call with financial analysts and investors that day, Waltz emphasized the Company's confidence in its audience and goal based on the Company's ability to compensate for any weaknesses in one area with strengths in other areas:

> I'm going to answer two sets of questions both back to this year and also the $18. There's multiple pass here. I always make the analogy of trying to drive through the city and assume you hit every green light. *Here is one where we have planned in to go even if one thing does a little less, there's enough other strengths here.*

18

\*\*\*

I'll be quite candid here on moving the guide up by $50 million was through both obviously $50 million, a 5%, 6% increase in EBITDA for the year, **but also a confidence we have in the year.** We could have just went to 800 to 900 and we each want to signal, guys, there's probably no risk on the downside here, and since David [Johnson] and I have been CEO and CFO, we have not missed this single earnings and we don't expect to hear it going forward.

57. On February 1, 2023, Atkore filed with the SEC a Current Report on Form 8-K and attached a press release announcing its first quarter 2023 financial results, including an 11% increase to its full-year adjusted EBITDA guidance to a range of $950 to $1.050 million and an increase to its guidance for full-year adjusted net income per diluted share to a range of $15.85 to $17.75, a 20% boost midpoint to midpoint.

58. On May 9, 2023, Atkore filed with the SEC a Current Report on Form 8-K and attached a press release announcing its second quarter 2023 financial results. In the press release, the Company again increased its full-year 2023 adjusted EBITDA guidance to a range of $1.015 million to $1.065 million and increased its adjusted net income per diluted share guidance to a range of $17.45 to $18.35.

59. On August 8, 2023, Atkore filed with the SEC a Current Report on Form 8-K and attached a press release announcing its third quarter 2023 financial results. In the press release, Atkore reported another increase for its adjusted net income per diluted share outlook to a range of $18.90 to $19.30.

60. On November 17, 2023, the Company filed with the SEC a Current Report on Form 8-K and attached a press release announcing its fourth quarter and full year 2023 financial results. The Company reported that it had achieved the top end of its guidance for adjusted net income per diluted share at $19.40 per share and easily met its guidance for adjusted EBITDA at $1.042 billion. In the press release, Defendant Waltz touted that Atkore "continued to successfully execute

on our strategic initiatives and deliver differentiated value to our customers" and the Company was encouraged "by the resilience of our business model and the differentiated value that our product portfolio provides to our customers."

61.     The Company also provided its 2024 guidance, expecting adjusted EBITDA to be between $900 million and $950 million, and adjusted net income per diluted share to range from $16.00 to $17.00. Atkore reaffirmed its previously announced 2025 goal from November 2022, targeting adjusted net income per diluted share of more than $18.00.

62.     During a call with financial analysts and investors that day, Waltz highlighted the "price normalization, primarily in our PVC business," and noted that PVC pricing was continuing to "slowly go down" and remained "good, better than what we forecasted." Waltz also confirmed that the company's gains in both adjusted EBITDA and earnings per share (EPS) were "much stronger than originally anticipated."

**C.     The Company and Its Leadership Attribute Declining PVC Prices To "Pricing Normalization"**

63.     On February 1, 2024, Atkore issued a press release announcing its financial results for the first quarter of fiscal year 2024. The Company reported net sales of $798.5 million, reflecting a 4.2% decline year-over-year. Atkore attributed the decrease partly to "decreased average selling prices across the Company's products of $130.4 million as a result of expected pricing normalization." Additionally, in the press release, Defendant Waltz stated that Atkore was off to a "great start for fiscal 2024" with "double digit volume growth in the first quarter driven by contributions across all key product areas," including an adjusted net income per diluted share of $4.12, which exceeded analyst estimates. Waltz also noted that given Atkore's strong first-quarter performance, the Company was raising its fiscal-year 2024 outlook for adjusted net income per diluted share to a range of $16.50 to $17.50.

64. That same day, Atkore hosted a conference call with financial analysts and investors to discuss its first quarter results. During the call, Defendant Johnson downplayed the pricing decline, emphasizing that it was anticipated and did not reflect any underlying deterioration in the Company's competitive positioning. Defendant Johnson stated that he was "pleased" with the Company's volume growth for the quarter, noting that organic volumes had increased by more than 13%. Johnson acknowledged that these gains were offset by ongoing pricing normalization but emphasized that the impact was anticipated and consistent with pricing trends Atkore had previously communicated to investors.

65. Defendant Waltz commented on increased competition labeling it "[n]othing of significance," and referred dismissively to "minor players" who "try to enter noise-level things," including "somebody importing a product." Defendant Johnson similarly reassured investors, stating that "the competitive landscape is fairly stable year-over-year."

66. On May 7, 2024, Atkore issued a press release announcing its financial results for the second quarter of fiscal year 2024, with net sales of $792.9 million—a decline of 11.5% year-over-year. The Company again attributed the decline to "decreased average selling prices across the Company's products of $85.5 million as a result of expected pricing normalization." Additionally, the Company lowered its full-year fiscal 2024 guidance, citing headwinds affecting its High-Density Polyethylene (HDPE) and solar-related business lines. It reduced its projected adjusted EBITDA range from $900–$950 million to a new outlook of $850–$900 million, attributing the change to challenges impacting these growth initiatives. Defendant Waltz praised the Company's "solid results in the second quarter," and expressed that he was "pleased" "with the results we've been able to achieve."

67.     Later that day, during a conference call with financial analysts and investors, Defendant Johnson reiterated that the Company was experiencing expected pricing normalization and that the results were "in line with our expectations, both sequentially and from a year-over-year perspective." Similarly, Defendant Waltz stated, "we are within our expectations of the pricing normalization topic." In response to a question about "imports of conduit," Waltz again downplayed competitive pressures, claiming that Atkore maintained a "price premium" due to its "reputation," "quality," and "ability to ship." The Company also reaffirmed its full-year fiscal 2025 target for adjusted net income per diluted share of "greater than $18.00."

68.     As a result of the decreased pricing and net sales, the Company's stock declined by 12.5% or $22.06 per share to close at $154.34 per share.

**D.     The Illegal Price Fixing Scheme Is Exposed, Leading to Antitrust Litigation Against Atkore**

69.     On July 26, 2024, an independent research firm, ManBear, published a report accusing Atkore and other PVC pipe manufacturers of engaging in an illegal price-fixing scheme. According to the report, these practices "massively inflated" PVC pipe prices and converter margins that seemed disconnected from actual market fundamentals. Although supply chains and input costs (such as resin) had normalized, the report noted that pipe prices stayed unusually high amid weak demand. The report pointed out data from OPIS showing that municipal water pipe and electrical conduit pipe prices were still about 4.7 times and 2.7 times higher, respectively, than pre-pandemic levels.

70.     The report further noted that shortly after a coordinated communication about a proposed price increase, major conduit manufacturers implemented nearly identical price adjustments across all geographic markets. It observed that Atkore's core electrical segment EBITDA increased by a factor of 3.4 between 2019 and 2023, fueled by an 86% rise in reported

prices and margin expansion from 20% to 38%. The report expressed concern over Atkore management's claims that these elevated margins were sustainable and highlighted the Company's fiscal year 2025 target of "at least $18" per share as unusually confident for a business with commodity-based exposure.

71.     On August 6, 2024, Atkore issued a press release announcing its financial results for the third quarter of fiscal year 2024. The Company reported net sales of $822.4 million, reflecting a 10.5% decline compared to the same period last year. The financial results also showed that adjusted net income per diluted share fell short of the average analyst estimate. Consequently, the Company lowered its full-year fiscal 2024 guidance, now expecting adjusted EBITDA to be between $772 million and $782 million, and adjusted net income per diluted share to be between $14.30 and $14.52. In the press release, Defendant Waltz commented, "The third quarter proved to be more challenging than we initially anticipated due to a limited increase in demand from the summer construction season and an overall soft pricing environment across most of our Electrical business." He added, "We anticipate these trends to continue into the fourth quarter and next year, and we've updated our expectations and outlooks accordingly." That same day, Atkore held a conference call with investors and analysts to discuss the quarterly results. Waltz elaborated on pricing trends, stating, "Pricing was softer than expected due to the slower end markets, particularly for our PVC conduit business and higher concentration of large projects where pricing tends to be more competitive."

72.     During the call, when asked to respond to the allegations raised in the July 26, 2024, report concerning the illegal price fixing scheme, Defendant Waltz dismissed the report, stating, "I am going to claim that report is unsubstantiated from the conclusions it tries to make." Despite

the serious nature of the allegations, Defendant Waltz did not address or refute any of the specific facts or data presented in the report.

73.     On August 23, 2024, antitrust class action lawsuits began to be filed against Atkore, OPIS,[2] and several other leading manufacturers of PVC municipal water and electrical conduit pipes. The antitrust lawsuits were brought by the Erie County Water on behalf of public water systems and public sewer authorities, and commercial contractors on behalf of all commercial purchasers. The lawsuits allege that these manufacturers engaged in an unlawful agreement to fix, raise, maintain, and stabilize prices for PVC pipe products, violating both federal and state antitrust laws. This conduct disrupted fair competition and led end users to pay artificially inflated prices. The lawsuits seek injunctive relief under Section 1 of the Sherman Act, treble damages, and other remedies under applicable state statutes. All pending antitrust cases have since been consolidated under the caption *In re PVC Pipe Antitrust Litigation*, Case No. 1:24-cv-07639-LAH (N.D. Ill.) ("Antitrust Class Action").

74.     On November 21, 2024, Atkore filed its Annual Report on Form 10-K with the SEC for the fiscal year ended September 30, 2024 (the "2024 10-K"). For the first time, the Company disclosed the existence of the Antitrust Class Action and related proceedings arising from alleged collusive conduct in the PVC pipe industry.

75.     Despite the seriousness of the allegations, Atkore attempted to minimize their potential significance:

> The Company believes there are defenses, both factual and legal, to the allegations in these various proceedings and the Company plans to vigorously defend itself. As these proceedings are in the early stages, it is not possible for the Company to

---

[2] In June 2025, OPIS agreed to pay $6 million to settle claims brought against it by classes that include commercial and municipal PVC pipe buyers, and to cooperate with the ongoing litigation against PVC pipe makers (including Atkore), representing the first settlements in the price-fixing litigation.

predict any outcome or estimate the amount of loss, if any, which could be associated with any adverse decision. While the Company does not believe that any of these proceedings will have a material adverse effect on its financial condition, the Company cannot give assurance that the proceedings will not have a material effect on its results of operations.

76.     The 2024 10-K was signed by Defendants Deitzer, Schrock, Waltz, Wynn, Isbell, James, Kershaw, Muse, Edwards, and Zeffiro.  Defendants Deitzer and Waltz certified pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") that the 2024 10-K fully complied with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that the information contained in the report fairly presented, in all material respects, the financial condition and results of operations of the Company.

77.     On November 21, 2024, the same day it filed its 10-K, Atkore issued a press release announcing its financial results for the fourth quarter and full fiscal year 2024. The Company reported net sales of $788.3 million for the quarter, reflecting a year-over-year decline of $81.6 million compared to the fourth quarter of 2023. In addition, Atkore issued guidance for the first quarter of fiscal 2025, projecting net sales between $655 million and $705 million—materially below the consensus analyst estimate of $743.6 million.

78.     Following the issuance of the press release, during a conference call with financial analysts and investors to discuss the Company's quarterly and year-end results, Defendant Waltz addressed the Company's pricing challenges, noting that Atkore's performance reflected shifting competitive conditions, including increased pressure from both domestic rivals and a rising volume of imported products. Defendant Deitzer elaborated on the financial impact, stating that profitability was adversely affected by "continued pricing normalization," particularly in the Electrical segment with revenue of only $565 million. Deitzer further acknowledged that adjusted EBITDA margins had narrowed due to softening prices in the Company's PVC product offerings.

Deitzer also highlighted intensified competition from imports as a contributing factor to margin pressure in the Company's steel conduit business.

**E.      The Company Discloses Weak Sales And Slashes Its Guidance**

79.      On February 4, 2025, Atkore filed with the SEC a Current Report on Form 8-K and attached a press release announcing its financial results for the first quarter of fiscal year 2025. The Company reported net sales of $661.6 million, nearly $20 million short of analysts' expectations. Atkore also drastically lowered its full-year guidance, reducing its projected adjusted EBITDA to between $375 million and $425 million, and its projected adjusted net income per diluted share to between $5.75 and $6.85.

80.      In the same press release, Atkore attributed the weak sales to "decreased average selling prices across the Company's products," including its PVC Pipes segment.

81.      Also, on February 4, 2025, Atkore held a conference call to discuss its first-quarter financial results. During the call, Defendant Waltz noted that the Company was forced to cut its guidance due to "challenges we are navigating" that the Company had not anticipated at the end of fiscal year 2022, when it signaled "normalization of our record profits."

82.      During the same call, Defendant Deitzer highlighted a quarterly decline in the Company's "plastic pipe and conduit product category" by "mid-single digits," compared to the "high single digits in the prior year." Deitzer attributed the reduced full-year guidance to the Company's PVC business "roughly $75 million or 3/4 of that is on the PVC side."

83.      In response to the Company's weak sales and reduced guidance, analysts lowered their price targets for Atkore stock. For example, RBC Capital reduced its price target from $91 to $73, stating that the 2025 guidance "implies more pricing cuts are needed to protect [Atkore's] market share" and that "essentially all pricing gains since COVID have been given back."

84. Following the reported decline in the Company's financials, Atkore's stock price plummeted $15.59 per share, or approximately 20%, falling from a closing price of $79.72 per share on February 3, 2025, to close at $64.13 per share on February 4, 2025.

85. On February 14, 2025, Atkore disclosed that it received a grand jury subpoena from the U.S. Department of Justice Antitrust Division seeking the "production of documents relating to the pricing of the Company's PVC pipe and conduit products."

86. On April 21, 2025, the Company filed with the SEC a Current Report on Form 8-K and attached a press release announcing an expected material impairment charge of approximately $121 million to $162 million in its second quarter results. The Company reported that the "impairment was triggered by the emergence in Q2 of a competing technology for federal stimulus funding, an acceleration of constraints on public spending and adverse market-related conditions during the second quarter, which include delays in the deployment of government stimulus funding for nationwide broadband infrastructure investments, in combination with the Company's forward-looking cash flow projections." On May 6, 2025, Atkore filed with the SEC a Current Report on Form 8-K and attached a press release announcing its second quarter financial results. In the press release the Company reported net sales of $701.7 million, down 11.5 % versus the prior year and a decrease in net income per diluted share of $5.13 versus the prior year, to a diluted loss per share of $1.46.  The Company also recognized a non-cash asset impairment charge of $127.7 million.

F.    **Atkore's False And Misleading Proxy Statement**

87. On December 13, 2024, the Company filed its 2024 Proxy Statement with the SEC soliciting shareholder votes to, among other things, elect the Director Defendants to the Board and approve executive compensation. The Proxy Statement was authorized by the Board.

88.     The 2024 Proxy Statement represents that the Board oversees and monitors the

Company's risk exposures:

> Our Board as a whole has responsibility for overseeing our risk management. The
> Board exercises this oversight responsibility directly and through its committees.
> The oversight responsibility of the Board and its committees is informed by reports
> from our management team and from our internal audit department that are
> designed to provide visibility to the Board about the identification and assessment
> of key risks and our risk mitigation strategies. The full Board has primary
> responsibility for evaluating strategic and operational risk management, and
> succession planning.

89.     The 2024 Proxy Statement represents that the Audit Committee is engaged in

vigorous oversight over risks to the Company: "Our Audit Committee has the responsibility for

overseeing our major financial and accounting risk exposures and the steps our management has

taken to monitor and control these exposures, including policies and procedures for assessing and

managing risk, including oversight on compliance related to legal and regulatory exposure and

meets regularly with our chief legal and compliance personnel."

90.     The 2024 Proxy Statement represents that the Company is "committed to keeping

pace with regulatory developments, an ever-evolving business landscape, and exemplary corporate

governance systems." Further, the Proxy represents that the Company aims "to uphold the highest

standards of corporate governance, guided by our values of Accountability, Teamwork, Integrity,

Respect and Excellence and notes that the Company's "corporate governance practices ensure that

we meet investor expectations and that our actions are aligned with our environment, social and

governance . . . efforts."

91.     The foregoing statements in the 2024 Proxy Statement were false and misleading

and omitted material information. Contrary to the representations made in the Proxy Statement,

the Board was required but failed to: (1) implement and maintain an effective system of internal

controls to ensure that the Company was complying with all laws, rules, and regulations governing

Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Further, the 2024 Proxy Statement contained false and misleading statements related to risk and corporate governance oversight by the Board and the Audit Committee and the Company's commitment to good corporate governance practices.

92.     On January 31, 2025, Atkore filed with the SEC a Current Report on Form 8-K announcing, among other things, the election of the Director Defendants to the Board and the approval of executive compensation pursuant to the solicitations in the 2024 Proxy Statement.

**G.     The Company Purchases Over Two Million Shares At Inflated Prices Based On The Individual Defendants' Misrepresentations**

93.     The Individual Defendants breached their fiduciary duties by forcing Atkore to buy back its own stock at artificially inflated prices, based on the misrepresentations outlined in this complaint. Between January 27, 2024, and December 27, 2024, the Company repurchased over 2.6 million shares of its stock, totaling approximately $313.6 million.

| Dates of Stock Repurchase | Number of Shares Repurchased | Average Price Per Share on Repurchase Date | Cost of Repurchase |
|---|---|---|---|
| January 27, 2024 to March 1, 2024 | 185,000 | $147.98 | $27,376,300 |
| March 2, 2024 to March 29, 2024 | 67,000 | $166.85 | $11,178,950 |
| March 30, 2024 to April 26, 2024 | 184,000 | $175.49 | $32,290,160 |
| April 27, 2024 to May 31, 2024 | 424,000 | $159.73 | $67,725,520 |

| | | | |
|---|---|---|---|
| June 1, 2024 to June 28, 2024 | 180,000 | $139.20 | $25,056,000 |
| July 27, 2024 to August 30, 2024 | 1,047,000 | $95.49 | $99,978,030 |
| October 26, 2024 to November 29, 2024 | 97,000 | $93.96 | $9,114,120 |
| November 30, 2024 to December 27, 2024 | 463,000 | $88.35 | $40,906,050 |

94.     The prices at which the Individual Defendants caused Atkore to repurchase its common stock were artificially inflated by the false and misleading statements and material omissions described herein, causing substantial damages to the Company and its stockholders.

**H.     Company Insiders Profit From The Misconduct**

95.     From February 2, 2023 through November 27, 2024, Defendants Waltz and Johnson sold substantial amounts of their Atkore shareholdings, collectively selling more than 200,000 shares and reaping more than $26 million in proceeds:

- Defendant Waltz sold 200,098 Atkore shares, reaping proceeds of over $24 million:

| DATE | SHARES SOLD | AVG PRICE/SHARE | PROCEEDS |
|---|---|---|---|
| 02/02/2023 | 30,000 | $140.2625 | $4,207,875 |
| 03/04/2024 | 50,000 | $173.847 | $8,692,350 |
| 11/26/2024 | 61,079 | $95.2067 | $5,185,130 |
| 11/27/2024 | 59,019 | $92.6423 | $5,467,656 |
| **TOTALS** | **200,098** | | **$24,183,011** |

- Defendant Johnson sold 12,701 Atkore shares, reaping proceeds of over $2 million:

| DATE | SHARES SOLD | AVG PRICE/SHARE | PROCEEDS |
|---|---|---|---|
| 03/04/2024 | 12,701 | $172.839 | $2,195,228 |

**I.     Securities Class Action Lawsuits Are Brought Against Atkore And Certain Officers**

96.     Following the above alleged false and misleading statements by the Company and its directors and officers, on February 21, 2025, securities class action lawsuits began to be filed against the Company and certain officers.

97.     On May 30, 2025, the pending securities class action lawsuits were consolidated under the caption, *In re Atkore Inc. Securities Litigation*, Master File No. 1:25-cv-01851. The lawsuits consolidated therein charge Atkore, Waltz, Deitzer and Johnson with violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as control person violations under Section 20(a) of the Exchange Act, on behalf of all purchasers of Atkore securities from August 2, 2022 through February 3, 2025, inclusive.

## VI.     DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

98.     Plaintiff brings this action derivatively and for the benefit of Atkore to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and officers of Atkore and violations of Sections 20(a), 10(b), and 14(a) of the Exchange Act, and SEC Rules 10b-5 and 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder, and to seek contribution for violations of Section 21D of the Exchange Act, as well as the aiding and abetting thereof.

99.     Atkore is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

100.     Plaintiff is, and has been at all relevant times, a stockholder of Atkore and was a stockholder of the Company at the time of the misconduct alleged herein. Plaintiff will adequately and fairly represent the interests of Atkore in enforcing and prosecuting its rights and, to that end, has retained competent counsel, experienced in derivative litigation, to prosecute this action.

101.     Demand upon the Director Defendants to institute this action against the Individual Defendants would be futile and is, therefore, excused. The Director Defendants are neither disinterested nor independent.

A.      **Demand Upon Defendant Waltz Is Excused**

102.    Defendant Waltz is the President and CEO of Atkore since 2018. Before becoming President and CEO, he held several executive roles at the Company, including Chief Operating Officer and Group President of the Atkore Electrical division. Therefore, Waltz is not independent. As an employee of Atkore, the Company provides Waltz with his principal occupation, from which he receives substantial compensation. In 2023 and 2024, he received $6,938,256 and $8,031,015 in compensation, respectively. Indeed, Atkore's 2024 Proxy Statement does not list Waltz as an independent director.

103.    Waltz is a named defendant in the pending consolidated Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

104.    Waltz had a powerful incentive to inflate Atkore's stock price through the price-fixing scheme and related false and misleading statements in order to profit from insider sales. Waltz sold 200,098 Atkore shares while in possession of material adverse non-public information, reaping proceeds of over $24 million. Thus, through material omissions and misrepresentations to the market about Atkore's financial condition, Waltz sold Atkore stock at artificially inflated prices, reaping a material personal benefit not shared with other Atkore stockholders from the misconduct pled herein.

105.    In addition to lacking disinterest due to his receipt of material personal benefits as a result of the misconduct challenged herein, Waltz faces a substantial likelihood of liability because he breached his fiduciary duties by trading on material, nonpublic information and by disseminating false and misleading financial information to the market.

106.    Waltz authorized the 2024 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

107.    Waltz benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Atkore Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

108.    Defendants Waltz and Schrock had a long-standing business relationship, which precludes them from acting with the required independence and disinterest with respect to considering whether to institute lawsuits against each other. Waltz worked for fifteen years in various divisions of Pentair plc from 1994 through 2009, including as President of Pentair Flow Technologies. Schrock worked at Pentair LLC, a subsidiary of Pentair plc, from 1998 through 2013. During that period, Schrock served as President and Chief Operating Officer at Pentair LLC. Both Waltz and Schrock held senior executive positions within the same division (Flow Technologies and related product units).

109.    Waltz, as a director of Atkore, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

110.    Waltz is neither disinterested nor independent. Any demand upon Defendant Waltz is futile and, thus, excused.

**B.      Demand Upon Defendant Schrock Is Excused**

111.    Schrock authorized the 2024 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

112.    Schrock benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Atkore Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

113.    Defendants Schrock and Waltz had a long-standing business relationship, which precludes them from acting with the required independence and disinterest with respect to considering whether to institute lawsuits against each other. Waltz worked for fifteen years in various divisions of Pentair plc from 1994 through 2009, including as President of Pentair Flow Technologies. Schrock worked at Pentair LLC, a subsidiary of Pentair plc, from 1998 through 2013. During that period, Schrock served as President and Chief Operating Officer at Pentair LLC. Both Waltz and Schrock held senior executive positions within the same division (Flow Technologies and related product units).

114.    Schrock, as a director of Atkore, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

115. Schrock is neither disinterested nor independent. Any demand upon Defendant Schrock is futile and, thus, excused.

**C.    Demand Upon Defendant Edwards Is Excused**

116. Edwards authorized the 2024 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

117. Edwards benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Atkore Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

118. Edwards, as a member of the Nominating and Corporate Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Atkore's Code of Conduct and Corporate Governance Guidelines. Edwards utterly failed to perform these duties.

119. Edwards, as a director of Atkore, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

120. Edwards is neither disinterested nor independent. Any demand upon Defendant Edwards is futile and, thus, excused.

**D.     Demand Upon Defendant Isbell Is Excused**

121.     Isbell authorized the 2024 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

122.     Isbell benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Atkore Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

123.     Isbell, as Chair of the Nominating and Corporate Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Atkore's Code of Conduct and Corporate Governance Guidelines. Isbell utterly failed to perform these duties.

124.     Isbell, as a director of Atkore, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

125.     Isbell is neither disinterested nor independent. Any demand upon Defendant Isbell is futile and, thus, excused.

**E.     Demand Upon Defendant James Is Excused**

126.     James authorized the 2024 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

127.    James benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Atkore Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

128.    James, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Atkore's compliance with relevant laws, rules, and regulations. James utterly failed to perform these essential duties.

129.    James, as a member of the Nominating and Corporate Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Atkore's Code of Conduct and Corporate Governance Guidelines. James utterly failed to perform these duties.

130.    James, as a director of Atkore, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

131.    James is neither disinterested nor independent. Any demand upon Defendant James is futile and, thus, excused.

## F.    Demand Upon Defendant Kershaw Is Excused

132.    Kershaw authorized the 2024 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

133.    Kershaw benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Atkore Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

134.    Kershaw, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Atkore's compliance with relevant laws, rules, and regulations. Kershaw utterly failed to perform these essential duties.

135.    Kershaw, as a director of Atkore, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

136.    Kershaw is neither disinterested nor independent. Any demand upon Defendant Kershaw is futile and, thus, excused.

## G.    Demand Upon Defendant Muse Is Excused

137.    Muse authorized the 2024 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

138.    Muse benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Atkore Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

139.    Muse, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Atkore's compliance with relevant laws, rules, and regulations. Daniels utterly failed to perform these essential duties.

140.    Muse, as a member of the Nominating and Corporate Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Atkore's Code of Conduct and Corporate Governance Guidelines. Muse utterly failed to perform these duties.

141.    Muse, as a director of Atkore, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

142.    Muse is neither disinterested nor independent. Any demand upon Defendant Muse is futile and, thus, excused.

## H.    Demand Upon Defendant Wynn Is Excused

143.    Wynn authorized the 2024 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

144.    Wynn benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Atkore Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

145.    Wynn, as Chair of the Audit Committee, had duties regarding oversight of the risks facing the Company and Atkore's compliance with relevant laws, rules, and regulations. Wynn utterly failed to perform these essential duties.

146.    Wynn, as a member of the Nominating and Corporate Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Atkore's Code of Conduct and Corporate Governance Guidelines. Wynn utterly failed to perform these duties.

147.    Wynn, as a director of Atkore, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

148.    Wynn is neither disinterested nor independent. Any demand upon Defendant Wynn is futile and, thus, excused.

**I.      Demand Upon Defendant Zeffiro Is Excused**

149.    Zeffiro authorized the 2024 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

150.    Zeffiro benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Atkore Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

151.    Zeffiro, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Atkore's compliance with relevant laws, rules, and regulations. Zeffiro utterly failed to perform these essential duties.

152.    Zeffiro, as a director of Atkore, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products which led to the Company's financial decline once the conspiracy was exposed; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

153.    Zeffiro is neither disinterested nor independent. Any demand upon Defendant Zeffiro is futile and, thus, excused.

## VII.    CLAIMS FOR RELIEF

### FIRST CLAIM
### Against the Individual Defendants for
### Violations of Section 10(b) and Rule 10b-5 of the Exchange Act

154.    Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

155.    This Count is asserted on behalf of the Company against the Individual Defendants for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

156.    At all relevant times, in connection with Atkore's repurchases of its shares, the Individual Defendants made, disseminated, or approved false and misleading statements about the

Company, omitting material information specified herein, which they knew or deliberately disregarded as false, misleading, or incomplete, intending to deceive, manipulate, or defraud. These false, misleading, or incomplete statements and Defendants' course of conduct were designed to artificially inflate the price of the Company's common stock.

157.    At the same time that the price of the Company's common stock was inflated due to the false, misleading, or incomplete statements, Defendants caused the Company to repurchase over two million shares of its stock at prices artificially inflated by those statements. They engaged in a scheme to defraud the Company by causing it to repurchase shares at inflated prices.

158.    The Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts or omitting material facts necessary to make the statements not misleading, given the circumstances; and/or (c) engaging in acts, practices, and a course of business that operated as a fraud or deceit upon the Company in connection with its purchases of Atkore common stock.

159.    The Individual Defendants, directly and indirectly, used means or instrumentalities of interstate commerce and/or the U.S. mail, participating in a continuous course of conduct that operated as a fraud and deceit upon the Company. They made or disseminated various false and/or misleading statements of material facts and omitted material facts necessary to make their statements not misleading, acted with intentional or reckless disregard for the truth, and employed devices and artifices to defraud in connection with the Company's purchase of Atkore common stock, deceiving the Company regarding its performance and internal controls.

160.    As directors and officers, the Individual Defendants were directly responsible for and are liable for all materially false, misleading, or incomplete statements made during the relevant times.

161.    The Individual Defendants acted with scienter, either intending to deceive, manipulate, or defraud, or with severe recklessness. The misstatements and omissions of material facts set forth herein were either known to Defendants or were so significant that they should have been aware of them.

162.    As a direct and proximate result of the Individual Defendants' wrongful conduct, the Company suffered damages related to its repurchases of Atkore common stock during the time period alleged. Therefore, the Individual Defendants are liable to the Company pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b-5.

163.    Plaintiff brings this claim within two years of discovering the facts constituting the violation and within five years of the violation.

**SECOND CLAIM**
**Against The Director Defendants and Defendant Deitzer for**
**Violations of Section 14(a) of the Exchange Act**

164.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as if fully set forth herein.

165.    The Section 14(a) claim alleged herein is based solely on negligence.  It is not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants and Defendant Deitzer.  Section 14(a) claim alleged herein does not allege and does not sound in fraud. Plaintiff specifically disclaims any allegations of reliance upon any allegation of, or reference to, any allegation of fraud, scienter, or recklessness with regard to those non-fraud claims.

166.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public

interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

167.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

168.     Under the direction of the Director Defendants and Defendant Deitzer, the 2024 Proxy Statement failed to disclose that the Atkore Board violated their fiduciary duties to Atkore and its stockholders by, among other things, failing to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.  Further, the 2024 Proxy Statement contained false and misleading statements related to risk and corporate governance oversight by the Board and the Audit Committee and the Company's commitment to good corporate governance practices.

169.     In the exercise of reasonable care, the Director Defendants and Defendant Deitzer should have known that by misrepresenting or failing to disclose the foregoing material facts, the

statements contained in the 2024 Proxy Statement were materially false and misleading and omitted material information.

170.     The false and misleading statements in, and information omitted from, the 2024 Proxy Statement were material to Atkore's stockholders in determining whether to, among other things, elect Defendants Waltz, Edward, Isbell, James, Kershaw, Muse, Schrock, Wynn, and Zeffiro to the Board and approve executive compensation.

171.     The material misstatements and omissions in the 2024 Proxy Statement damaged the Company.

172.     Plaintiff, on behalf of Atkore, seeks relief for damages inflicted upon the Company based on the misleading 2024 Proxy Statement in connection with the improper election of Defendants Waltz, Edwards, Isbell, James, Kershaw, Muse, Schrock, Wynn, and Zeffiro to the Board and the approval of executive compensation.

**THIRD CLAIM**
**Against The Individual Defendants for Contribution**
**Under Section 21D of the Exchange Act**

173.     The conduct of the Individual Defendants, as described herein, has exposed the Company to significant liability under the federal securities laws.

174.     Atkore is named as a defendant in a related securities fraud class action lawsuit that alleges and asserts claims arising under the federal securities laws. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Atkore is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Individual Defendants as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from

the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

175.     As officers and directors, the Individual Defendants had the power or ability to, and did, control or influence, either directly or indirectly, Atkore's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

176.     The Individual Defendants are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

177.     The Individual Defendants have damaged the Company and are liable to the Company for contribution.

## FOURTH CLAIM
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

178.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

179.     The Individual Defendants, by virtue of their positions with Atkore and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Atkore and officers and directors who made the false and misleading statements alleged herein within the meaning of § 20(a) of the Exchange Act. The Individual Defendants had the power and influence, and exercised same, to cause Atkore to engage in the illegal conduct and practices complained of herein.

180.     Plaintiff, on behalf of Atkore, has no adequate remedy at law.

**FIFTH CLAIM**
**Against the Individual Defendants for Breach of Fiduciary Duty**

181.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

182.    The Individual Defendants owed and owe fiduciary duties to Atkore.  By reason of their fiduciary relationships, the Individual Defendants specifically owed and owe Atkore the highest obligation of good faith and loyalty in the administration of Atkore's affairs.  The Board also had specific fiduciary duties as defined by the Company's corporate governance documents and principles that, had they been discharged in accordance with the Board's obligations, would have prevented the misconduct and consequential harm to Atkore alleged herein.

183.    The Individual Defendants ignored their obligations under state and federal law. The Individual Defendants failed to make a good faith effort to correct the problems or prevent their occurrence.

184.    The Individual Defendants each violated their fiduciary duties to Atkore and its stockholders by, among other things, failing to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Atkore's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the Company's involvement in an unlawful price-fixing conspiracy that artificially inflated the prices of the Company's PVC products hiding the Company's financial decline in the short term; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

185.    The Individual Defendants further breached their fiduciary duties to Atkore by, *inter alia,* making or allowing the dissemination of false and misleading statements and material

omissions in public statements and regulatory filings and permitting Defendants Waltz and Johnson to unload shares on the unsuspecting public while Defendants Waltz and Johnson were in possession of material nonpublic information.

186. By committing the misconduct alleged herein, the Individual Defendants breached their duties of good faith and loyalty in the management and administration of Atkore's affairs and in the use and preservation of Atkore's assets.

187. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Atkore has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

188. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

## SIXTH CLAIM
### Derivative Brophy Claim against Defendants Waltz and Johnson

189. Plaintiff incorporates by reference and reallege each and every allegation set forth above as if fully set forth herein.

190. As directors and/or officers of Atkore, Defendants Waltz and Johnson owed fiduciary duties of loyalty and good faith to the Company.

191. Defendants Waltz and Johnson sold Atkore stock while in possession of material nonpublic information that artificially inflated the price of Atkore stock.

192. By selling Atkore stock while in the possession of material adverse nonpublic information that artificially inflated the price of Atkore stock, Defendants Waltz and Johnson exploited their positions at Atkore and breached their fiduciary duties to Atkore. Defendants Waltz and Johnson improperly benefited from their breaches of fiduciary duty and are liable to Atkore for their benefit therefrom.

193.     Plaintiff, on behalf of Atkore, has no adequate remedy at law.

### SEVENTH CLAIM
### Against The Individual Defendants For Aiding And Abetting

194.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if fully set forth herein.

195.     Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Individual Defendants are in breach of their duties to the Company and have participated in such breaches of duties.

196.     In committing the wrongful acts, each of the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct.  They have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, and/or assisted, each other in breaching their respective duties.

197.     Because the actions described herein occurred under the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

198.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)     Declaring that Plaintiff may maintain this action on behalf of Atkore, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Atkore;

(c)    Declaring that the Individual Defendants violated Sections 10(b), 14(a), 20(a), and 21D of the Exchange Act;

(d)    Determining and awarding to Atkore the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(e)    Directing Atkore to take all necessary action to reform and improve its compliance, internal control systems and corporate governance practices and procedures to protect the Company and its stockholders from a repeat of the damaging events described herein;

(f)    Ordering disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties;

(g)    Ordering Defendants Waltz and Johnson to disgorge and pay to the Company all profits, benefits, and other compensation obtained by their insider trading;

(h)    Awarding to the Company restitution from Defendants, and each of them;

(i)    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

(j)    Granting such other and further relief as the Court deems just and proper.

## IX.    JURY DEMAND

**X.**    Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 15, 2025

By:    /s/ *Marvin A. Miller*

Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
53 W. Jackson Blvd.
Suite 1320
Chicago, IL  60604
(312) 332-3400
Email:  mmiller@millerlawllc.com
           lfanning@millerlawllc.com

*Local Counsel and Plaintiff's Attorney*


David C. Katz
Mark D. Smilow
**WEISS LAW**
305 Broadway, 7th Fl.
New York, NY 10007
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: dkatz@weisslawllp.com
           msmilow@weisslawllp.com

Joshua M. Rubin
Jonathan Meer
4 Brighton Rd., Ste. 204
Clifton, NJ 07014
Email: jrubin@weisslawllp.com
           jmeer@weisslawllp.com

*Attorneys for Plaintiff*

## VERIFICATION

I, Barry Rosenfeld, on behalf of the LR Trust (the "Trust"), hereby verify that the Trust is a stockholder of Atkore, Inc. ("Atkore"), having acquired Atkore shares in February 22, 2021, and having held Atkore shares continuously at all relevant times herein. I, on behalf of the Trust, am ready, willing, and able to pursue this stockholder derivative action on behalf of and for the benefit of Atkore. I have reviewed the allegations in the attached Verified Stockholder Derivative Complaint (the "Complaint"), and as to those allegations of which I have personal knowledge, I know those allegations to be true, accurate, and complete. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation, and for that reason, I believe them to be true. Having received a copy of the Complaint, and having reviewed it with my counsel, I hereby authorize its filing on behalf of the Trust.

Dated: July 10, 2025

Barry Rosenfeld, Trustee LR Trust